UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHARON WOOTEN,
          Plaintiff

        v.

RECONSTRUCTION HOME, INC.,
         Defendant

5:02-CV-01278
(NPM)

APPEARANCES:

SHARON M. SULIMOWICZ
Thaler & Thaler
Attorneys & Counselors
309 North Tioga Street
Ithaca, New York 14851

ALAN J. POPE
Pope, Schrader & Murphy, LLP
Attorneys at Law
Twenty Haley Street
East Tower-Seventh Floor
Post Office Box 510
Binghamton, New York 13902

OF COUNSEL:

**NEAL P. McCURN, S.J.**

## MEMORANDUM-DECISION & ORDER

### *Introduction*

Plaintiff Sharon Wooten, an African-American woman, brings this employment discrimination action against defendant Reconstruction Home, Inc.

1

("Reconstruction"), a skilled nursing facility located in Ithaca, New York. In her

first cause of action plaintiff alleges that Reconstruction discriminated against her

on the basis of her race "in refusing to hire and/or terminating her" as an Assistant

Director of Nursing ("ADON"), in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff makes the same allegations in her

second cause of action, but this one is based upon alleged violations of section

297(9) of the New York Human Rights Law. Plaintiff's third cause of action is for

breach of contract. Although she did not specifically allege promissory estoppel,

during oral argument plaintiff clarified that that is the basis for her fourth cause of

action. Plaintiff's fifth cause of action is based upon negligent misrepresentation.

 Reconstruction is moving for summary judgment pursuant to Fed. R. Civ. P.

56.   As to her discrimination causes of action,[1] Reconstruction argues that

plaintiff Wooten cannot make out a *prima facie* case of racial discrimination

because she cannot establish two necessary elements of such a claim: (1) that she

was qualified; and (2) that she was terminated "under circumstances giving rise to

an inference of discrimination." Insofar as her breach of contract claim is

concerned, Reconstruction contends that plaintiff was an "at will" employee

because she was hired for an indefinite period of time, and as such it could

"unilaterally rescind or terminate [plaintiff's] job offer for any reason[,]" and that

is exactly what it did. Defendant's Memorandum of Law ("Def. Memo.") at 25.

Thus, it is entitled to summary judgment on the breach of contract claim as well.

 Further, as to the negligent misrepresentation claim, Reconstruction argues

---

[1] The analysis for plaintiff Wooten's Title VII claims is the same as that for her
Human Rights Law claim. See Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005)
(citation omitted). Thus, the court will jointly analyze these two causes of action.

that plaintiff cannot show that there was "even an agreement on any minimum time of employment," and thus "no such misrepresentation was ever made[,]" let alone a negligent misrepresentation.  Defendant's Reply Memorandum of Law ("Def. Reply") at 19.  Despite the fact that Reconstruction purports to be moving for summary judgment seeking dismissal of the complaint in its entirety, it did not address plaintiff's fourth cause of action based upon the doctrine of promissory estoppel.  See Def. Notice of Motion.

Plaintiff responds that the court must deny Reconstruction's motion as to her discrimination claims because she has made out a *prima facie* case of same. Furthermore, plaintiff responds that Reconstruction is not entitled to summary judgment on her discrimination claims because its reasons for rescinding the ADON offer are nothing more than a "pretext for discrimination."  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Memo.")  at 16.  As to the breach of contract claim, plaintiff takes the position that "factual issues exist which render [it] ambiguous[,]" and hence summary judgment is improper.  Id. at 21.  Plaintiff further maintains that there are factual issues which preclude summary judgment on her promissory estoppel and negligent representation claims.  The court will address each of plaintiff's causes of action in turn.

### ***Background***

### *I.  State Survey*

In the summer of 2001, Reconstruction received a "Statement of Deficiencies" which resulted from a State Department of Health ("DOH") survey of its facility.  See Affidavit of Sharon Y. Wooten (Aug. 9, 2004), exh. L thereto. Those results were far from favorable.  In fact, Reconstruction had received an

3

"immediate jeopardy" citation due to a "potential for choking" situation. Id., exh.
M thereto at 2. This was not the first time Reconstruction had received an
"immediate jeopardy" citation. See id. at 1. Carolyn Backes, Continuing Care
Program Director for DOH, testified during her deposition that such citations were
"very significant and very serious[,]" which would "require major systemic
changes to correct[.]" Affidavit of Alan J. Pope (July 15, 2004), exh. 13 thereto
(Deposition of Carolyn Backes (April 22, 2004)) at 34. When asked whether
Reconstruction was in danger of being closed at that point, Ms. Backes responded,
"Yes." Id. This threat of closure, Ms. Backes agreed, was "very real and
serious[.]" Id.

In mid-July of 2001 there were a series of Board meetings in quick
succession, which centered around the DOH survey and its implications on the
continuing operation of Reconstruction. At the July 13, 2001 meeting a motion
was made to "terminate" Jeanne Randall, Reconstruction's administrator at the
time, "'effective upon an interim manager being appointed[.]'" Id., exh. L thereto
at 2. Evidently due to her termination, a few days later, at another Board meeting,
Reconstruction decided not to include Ms. Randall in any further financial
reporting. See id., exh. M thereto. It also decided to informally begin a search for
Ms. Randall's replacement. See id. at 3. Apparently sometime between the July
16, 2001 Board meeting and the July 23rd Board meeting, Ms. Randall announced
her retirement. See id., exh. N thereto at 3. Whether she was terminated or
retired, the outcome was the same -- at least by July 25, 2001 Ms. Randall was no
longer a Reconstruction employee.

## II. Plaintiff's Hiring

One of Ms. Randall's last acts before leaving Reconstruction was to hire

4

plaintiff to be an ADON. Reconstruction had been seeking someone to fill that position for "several months" prior to the time plaintiff's resume was brought to Ms. Randall's attention. Affidavit of Jeanne Randall (April 23, 2004) at 1, ¶¶ 3 and 4. During the several months in which it had been seeking an ADON, Reconstruction was "unable to find good qualified candidates to fill . . .[that] position, but in July 2001, a Syracuse based national employment agency provided Ms. Randall with plaintiff's resume. Id. at 1-2, at ¶¶ 4 and 5. Plaintiff provided her resume to that agency because she was seeking interim "consulting assignments in other states." Pope Aff., exh. 10 (Deposition of Sharon Wooten (April 16, 2004)) thereto at 17 and 18. After reviewing Ms. Wooten's resume, Randall described her as having had "significant experience, having previously worked in an ADON position at two other facilities." Randall Aff. at 2, ¶ 5.

In July 2001, Ms. Randall interviewed plaintiff, who was and is a resident of St. Louis, by telephone. Id. After that interview, Ms. Randall checked with plaintiff's references and found them to be "excellent, above and beyond [her] expectations." Id. In Ms. Randall's opinion, plaintiff's "credentials made her more than qualified to work as an ADON, under the supervision of a Registered Nurse ("RN")." Id. In short, Ms. Randall thought plaintiff "had the skills and knowledge that [Reconstruction] w[as] looking for." Id.

When negotiating with plaintiff, Ms. Randall avers that she was aware that plaintiff is a Licensed Practical Nurse ("LPN"), "and although [Reconstruction] would have liked to have found an RN for the ADON position," Ms. Randall further avers that "it was [her] understanding that as long as [plaintiff] was under the supervision of an [sic] RN, she could clearly do the job." Id. at 2, ¶ 6. From Ms. Randall's viewpoint, plaintiff "had the experience [Reconstruction] needed to

5

turn things around" there. Id.

Ms. Randall claims that she "advised the Board . . . that Ms. Wooten was an LPN when [Reconstruction] decided to hire her." Id. This is corroborated by the Board's president at the time, who testified at his deposition that "undoubtedly" Ms. Randall advised the Board that plaintiff was an LPN. Pope Aff., exh. 17 thereto (Deposition of George Schneider (April 23, 2004)) at 26. According to Ms. Randall, "[n]o one expressed any concern about Ms. Wooten being an LPN, especially when her reference check was above and beyond what an employer could expect." Id.

On July 17, 2001, Reconstruction faxed plaintiff a "contract for repayment of advances." Pope Aff., exh. 5. The document itself is titled "EMPLOYMENT AGREEMENT between Reconstruction . . . and . . . Wooten[.]" Id. at 2. This "agreement" is undated and although there is a signature line for plaintiff and Ms. Randall, only the latter signed it. See id. Among other things, this "Agreement" provided that "in consideration of" an "annual salary of $50,000.00[,]" Reconstruction would advance plaintiff "various expenses associated" with her relocating to the Ithaca area. See id.

In addition to the "employment agreement," the record includes what is described as "formal letter of employment offer[.]" Id., exh. 3 thereto. This letter is dated July 23, 2001 and was signed on July 24, 2001, by Jeanne Randall, "Administrator - or Authorized Agent" for Reconstruction and by plaintiff as "candidate" on July 25, 2001. Id. It purports to update a prior letter "originally sent on 7/17/01[,]" and recites that plaintiff was to begin employment with Reconstruction on July 25, 2001. See id. It further recites that plaintiff's title would be ADON, and consistent with the employment agreement her salary would

6

be "\$50,000.00 per year." See id.

Plaintiff arrived in Ithaca on July 25, 2001, after the Board had decided to replace Ms. Randall. She worked at Reconstruction a total of four and a half days before her offer of employment was rescinded. During that time plaintiff claims that she had encounters with several employees who "commented on the fact that [she] was not permitted to act as the ADON, and wondered if, perhaps, it was because she was Black." Pl. Memo. at 15 (citations and footnote omitted).

### *III. New Administrator*

On July 26, 2001, one day after plaintiff's arrival in Ithaca, Irene Rathke was interviewed for the position of Interim Administrator to replace Ms. Randall. Pope Aff., exh. 6 thereto at 1. Ms. Rathke was hired later that same day and began working the following day, July 27, 2001. See id.

At the July 26th Board meeting, where the decision was made to hire Ms. Rathke, there was also some discussion of the new ADON, plaintiff Wooten, who had started work the previous day. Even though the Board President acknowledged that Ms. Randall had previously told them that plaintiff was an LPN, upon Ms. Randall's arrival, the Board "expressed confusion" as to why plaintiff, who was not a RN, would have been hired as an ADON. Id. The Board "consensus" was that the Board President "should look into this situation further." Id. Those minutes further state that "since th[at] meeting" the Board President "has authorized Rathke to use a labor lawyer . . . that [she] knows relative for assistance with the . . . Wooten situation, and to seek help in reversing the hiring situation with minimum cost to . . . [Reconstruction]." Id.

### *IV. Recission*

On Monday, July 30, 2001, Rathke met with plaintiff and rescinded the job

7

offer for ADON. Rathke claims that she offered plaintiff a position as an LPN at a lower rate of pay and plaintiff declined. Plaintiff denies that such an offer was made. Plaintiff returned to Reconstruction "the next day or the following day" to pick up her paycheck and to deal with reimbursements for her travel expenses. Pope Aff., exh. 10 thereto at 130. At that time, plaintiff claims that Ms. Rathke walked up to her "and basically said, based on my experience with you people, you cannot do the job." Id. Plaintiff immediately wrote that statement down on a piece of paper which she retrieved from her purse. Id. at 131; see also Wooten Aff., exh. H thereto.

## V. EEOC

Later in 2001 plaintiff filed a complaint with the EEOC. She alleged that on July 30, 2001, Rathke told plaintiff that she could not be an ADON because "it was against state law for a [LPN] to supervise [RNs]." Pope Aff., exh. 7. Plaintiff further alleged that she "believed that [her] race, African-American, was a factor in [her] discharge." Id. Plaintiff believes race was a factor in her discharge because in her opinion she "was well qualified for the job[;] . . . [t]here is no state law which prohibits LPNs from supervising RNs[;]" and "Ms. Rathke did not know that [plaintiff] was African-American until [she] reported to work on July 25, 2001[.]" Id. Interestingly, plaintiff did not mention in this complaint the arguably racist comment purportedly made by Ms. Rathke. Nor did she mention the other comments supposedly made by other employees pertaining to her race. The EEOC issued a Notice of Right to Sue on July 12, 2002. Wooten Aff., exh. J thereto.

## Discussion

## I. Governing Legal Standard

8

"The standards for summary judgment motion[s] are well established and there is no need to repeat the same herein." Community General Hospital, Inc. v. Zebrowski, No. 03-CV-249, 2004 WL 1769102, at * 5 (N.D.N.Y. Aug. 2, 2004) (internal quotations and citations omitted). It is worth noting in the context of this employment discrimination case that such "actions often present factual issues as to the presence or absence of discriminatory intent that are not appropriately resolved at the summary judgment stage[.]" Norris v. New York City Housing Authority, No. 02 Civ. 6933, 2004 LW 1087600 (S.D.N.Y. May 14, 2004) (citation omitted). Therefore, "courts must exercise caution in such cases and grant this remedy only when 'no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight.'" Id. (quoting Gallo v. Prudential Residential Servs. Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994)).

## *II. Title VII*

Under Title VII it is "an unlawful employment practice" for an employer, among other things, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1) (2003). The focus of the present case is on whether Reconstruction discriminated against plaintiff in violation of this statute by rescinding the ADON offer.

### *A. Prima Facie Case*

"Courts recognize that most discrimination . . . is not carried out so openly as to provide direct proof of it." Sanders v. New York City Human Resources Administration, 361 F.3d 749, 755 (2d Cir. 2004). "Accordingly, an aggrieved

9

party may use circumstantial evidence to assert a *prima facie* case of discrimination[.]" Id. There are four elements to such a case: "1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Id. (internal quotation marks and citation omitted). "Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is minimal." Collins v. New York City Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002) (internal quotation marks and citation omitted). This burden is "neither onerous, nor intended to be rigid, mechanized or ritualistic." Williams v. R. H. Donnelly, Corp., 368 F.3d 123, 127 (2d Cir. 2004) (internal quotation marks and citation omitted). "Nevertheless, this burden is not inconsequential." Id. "To make the required showing, a plaintiff may rely on direct evidence of what the defendant did and said, but more often than not must depend on the cumulative weight of a circumstantial evidence to make out a prima facie case." Soares v. University of New Haven, 154 F.Supp.2d 365, 373 (D.Conn. 2001) (citations omitted).

Reconstruction asserts that plaintiff cannot establish a *prima facie* case because she cannot prove that she was "qualified to perform the duties of the job at issue[.]" See Salazar v. Dembin, 2005 WL 524578, at * 3 (E.D.N.Y. 2005) (citing Donnelley, 368 F.3d at 126). Nor, according to Reconstruction can plaintiff establish the fourth element of a *prima facie* case – that she was terminated "under circumstances suggesting discrimination." The court will address these factors *seriatim.*

### 1. Qualifications

10

The court's task in assessing a plaintiffs' qualifications at the *prima facie* stage is a limited one. The Second Circuit has "long emphasized that the qualification prong must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision." Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001) (citation omitted). "To show 'qualification' sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff need not show perfect performance or even average performance." Id. (internal quotation marks and citation omitted). Instead, a plaintiff "need only make the minimal showing that she possesses the basic skills for the position necessary for the position of [the] job." Id. (internal quotation marks and citations omitted); see also Owens v. New York City Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991) (McDonnell- Douglas "requires only a minimal showing of qualification to establish a prima facie claim[]"). This minimal showing is consistent with the purpose of the qualification prong which "is simply to help eliminate . . . the most common nondiscriminatory reasons for the plaintiff's rejection[,]" id. (internal quotation marks and citations omitted), *i.e.* "an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n. 44 (1977). "It cannot be more than that." Gregory, 243 F.3d at 696.

Keeping in mind the *de minimis* nature of plaintiff Wooten's burden at this *prima facie* stage, Donnelley, 368 F.3d at 126 (citation omitted), compels a finding that she was qualified to act as ADON at the time of her hiring. The primary reason Reconstruction offers as to why plaintiff was not qualified is that she was a LPN, not a RN. See Def. Memo. at 16 ("[A]s an LPN in New York State, Sharon

Wooten was not qualified to act as the [ADON] for . . . Reconstruction . . . in
2001."). The record proof is clear however that in contrast to the position of
Director of Nursing, which does require an RN, Pope Aff., exh. 10 thereto at 110,
New York law does not require that an ADON also be an RN. Indeed Carolyn
Backes, Continuing Care Program Director for the DOH, repeatedly testified as
such. Id., exh. 13 thereto (Deposition of Carolyn Backes (April 22, 2004)) at 22-
23; 26; 27; and 36.

    Moreover, as noted earlier, Jeanne Randall, the administrator who originally
hired plaintiff avers that she found plaintiff's "credentials made her more than
qualified to work as an ADON, under the supervision of a . . . RN." Randall Aff.
at 2, ¶ 5. Ms. Randall described plaintiff's references, whom Ms. Randall
contacted, as "excellent, above and beyond [her] expectations." Id. According to
her resume, Ms. Wooten had "[o]ver 11 years experience in healthcare[,]"
including working at a 140 bed "skilled and assisted living facility, as well as
working at a 210 bed facility, and hospital experience. Wooten Aff., exh. A
thereto; see also Pope Aff., exh. 10 thereto at 14. Reconstruction's business
manager at the time, Georgia Weed, confirmed that plaintiff "had a lot of
experience[.]" Pope Aff., exh. 15 thereto (Deposition of Georgia Weed (April 22,
2004)) at 11.

    In addition to her practical experience, Ms. Wooten was an LPN and had
taken "RN pre-requisites[.]" Id. In fact, when she interviewed for the ADON
position she was enrolled in a university healthcare management program where
she was "completing her RN as well as working on [her] Masters[.]" See Pope
Aff., exh. 10 thereto at 37; see also Wooten Aff., exh. A thereto. In Ms. Randall's
opinion plaintiff possessed the "skills and knowledge that [Reconstruction] w[as]

looking for[;]" and "she had the experience [Reconstruction] needed to turn things around [there]."  Randall Aff. at 2, ¶¶ 5 and 6.

Relying heavily upon the Randall affidavit, the court finds that plaintiff Wooten has made a "minimal showing" that she was qualified to be an ADON when she was hired.  The court is fully cognizant of the fact that given the jeopardy in which Reconstruction found itself with the DOH, Ms. Randall's replacement, Ms. Rathke, believed that the ADON should be an RN.  At the same time, however, "in order to establish a prima facie case of discrimination, [plaintiff] must show that she met the defendant's criteria for the position." Williams, 368 F.3d at 127.  The averments of Ms. Randall as to plaintiff's qualifications, plaintiff's qualifications as reflected in the record, and the Board president's admission that it was aware plaintiff was an LPN when she was offered the job, show that plaintiff did meet Reconstruction's criteria for ADON *at that time*.  Reconstruction's subsequent hiring of a new administrator who had a different view of the qualifications necessary to be an ADON does not change the fact that plaintiff has shown that when she was hired she had the requisite qualifications.

Not only did Ms. Randall find plaintiff to be qualified to serve as an ADON, but there is testimony from Ms. Rathke which also supports a finding that plaintiff was qualified.  More specifically, Ms. Rathke testified that two of the tasks which an LPN could not perform at Reconstruction, but which an RN could, were to "sign off on clinical assessments and sign off on MDS's[2] [sic][.]" Pope Aff., exh. 11 (Deposition of Irene Rathke (April 16, 2004)) thereto at 67.  Interestingly,

---

[2]    A "MDS" is a Minimum Data Set assessment form.  Pope Aff., exh. 10 thereto at 73.

when pressed Ms. Rathke testified that because at the time Reconstruction had an MDS coordinator, plaintiff would not have been put in the position of having to sign off on MDSs. Id. at 68. Thus, by her own admission the one task which plaintiff, as an LPN, could not perform, was to sign off on clinical assessments. In the court's opinion, the inability to perform this one specific task is not sufficient to overcome the "inference of minimal qualifications," which is all that plaintiff is required to show at this point in the analysis. See Gregory, 243 F.3d at 969.

Viewing the record as a whole and drawing all reasonable inferences in favor of plaintiff as the non-party, the court finds that plaintiff has made the required "minimal showing" that she possessed the "basic skills necessary to perform" as ADON. The "inference of minimal qualification" is "easier to draw" in the present case "because, by hiring [plaintiff], [Reconstruction] itself ha[d] already expressed a belief that she [wa]s minimally qualified." See id. Perhaps the fact that plaintiff is not an RN will provide Reconstruction with a "legitimate, non-discriminatory reason" for her termination, but at this juncture the court finds that plaintiff has met her _de minimis_ burden of showing that she was qualified to be ADON when she was hired.

### 2. _Inference of Discrimination_

Even if the court finds, as it has, that plaintiff was qualified, nonetheless Reconstruction contends that she still cannot make out a _prima facie_ case of discrimination because she cannot show that her termination "occurred under circumstances giving rise to an inference of discrimination." See Sanders, 361 F.3d at 755. Because this is a summary judgment motion, the court's "determination with respect to the circumstances that give rise to an inference of discrimination must be a determination of whether the proffered admissible

14

evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." McLee v. Chrysler Corporation, 109 F.3d 130, 135 (2d Cir. 1997) (citations omitted). Circumstances that establish an inference of discriminatory motive include, *inter alia*, "actions or remarks that could be viewed as reflecting a discriminatory animus [or] preferential treatment given to employees outside the protected class." Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (citations omitted). It bears repeating that "[p]laintiff's burden on establishing a prima facie case is 'not onerous.'" Soares, 154 F.Supp.2d at 373 (quoting Tarshis v. The Riese Org., 211 F.3d 30, 35-36 (2d Cir. 2000)).

Plaintiff advances four reasons which she believes support an inference of discrimination. First, Reconstruction's assertion that plaintiff was terminated because she was not an RN is, according to plaintiff, undermined by the evidence that Ms. Randall advised the Board that plaintiff was an LPN when that hiring decision was made. See Randall Aff., at 2, ¶ 6; and 3, ¶ 10. The Board's knowledge that Ms. Wooten was not a RN was corroborated by the then president of Reconstruction's Board. As mentioned earlier, he testified that "undoubtedly" Ms. Randall told the Board that plaintiff was an LPN. Pope Aff., exh. 17 thereto (Deposition of George Schneider (April 23, 2004)) at 26. Second, plaintiff believes that the fact that Reconstruction did not provide her with a photo identification badge during the short time three and a half days she worked there further supports an inference of discrimination.

Third, plaintiff contends that an inference of discrimination also arises from the fact that Reconstruction did not offer her another position. The proof on this issue is contradictory. Ms. Rathke avers that when she "rescinded" the ADON job

15

offer, she offered plaintiff a position as a LPN, but not for the same rate of pay, which plaintiff declined. Affidavit of Irene Rathke (July 14, 2004)at 4, ¶ 9. Ms. Crozier, the Admissions Coordinator and Social Work Assistant, likewise testified that Rathke told plaintiff that she could not be the ADON, but that Rathke offered her an LPN position. See Pope Aff., exh. 12 thereto (Deposition of Penny Crozier (March 26, 2004)) at 4 and 32. Plaintiff Wooten unequivocally avers, however, that "[a]t no time did [Ms.] Rathke offer [her] any other position with Reconstruction[.]" Wooten Aff. at 7, ¶ 38.

Fourth, plaintiff is relying upon remarks purportedly made by other employees wondering whether her race was the reason plaintiff was not permitted to stay on as ADON. In particular, plaintiff is relying upon comments supposedly made by three different Reconstruction employees. She first points to a conversation she allegedly had with CNA Forrest McCloud wherein, according to plaintiff, he expressed "surprise[] to see that . . . Reconstruction . . . hired [plaintiff] to be the ADON because [she] [is] black." Wooten Aff. at 5, ¶ 24; see also id. at 5, ¶ 25.

Next plaintiff relies upon several comments supposedly made by Penny Crozier. Plaintiff avers that when she had lunch with Ms. Crozier and Ms. Crozier's mother on July 27, 2001, a day after plaintiff's first full day of work, plaintiff told them of her conversation with Mr. McCloud. See Wooten Aff. at 5, ¶ 25. According to plaintiff, Ms. Crozier's response was "that she was not surprised" by McCloud's comment "because there were no other black people in management." Id. Ms. Crozier's observation that there were no other black people in management is borne out by a list of Reconstruction employees, which includes a breakdown by race and position. See Supplemental Affidavit of Sharon

16

Sulimowicz (Aug. 17, 2004), exh. S thereto.

Furthermore, plaintiff avers that during lunch she and Ms. Crozier "also talked about the fact that [she] was not being permitted to act as the ADON." Wooten Aff. at 5-6, ¶ 25. In addition, plaintiff avers that Ms. Crozier "said that she hoped it wasn't because [plaintiff] [is] black." Id. at 6, ¶ 25. Plaintiff claims this was not the only time Ms. Crozier made such a comment. On the evening of July 27, 2001, plaintiff maintains that she, Ms. Crozier and Ms. Crozier's husband were "talk[ing] about [plaintiff's] concerns" when Ms. Crozier again allegedly "said that she hoped that they weren't treating [plaintiff] th[at] way because of [her] race." Id. at 6, ¶ 30. Plaintiff claims that "[o]n at least two . . . separate occasions, Penny said, 'But that's the only thing it can be.'" Id.

Ms. Crozier denies having made such comments. During her deposition, Ms. Crozier was specifically asked: "Okay, so you never . . . made the statement that 'the only reason this is going on is because you're black, I'd hate for that to be true, but I think it is'?" Pope Aff., exh. 12 thereto at 33. Ms. Crozier flatly responded, "No." Id.

In addition to the purported comments by Ms. Crozier and Mr. McCloud described above, plaintiff is relying upon a similar comment allegedly made by Beverly Sullivan, MDS Coordinator. On July 27, 2001, plaintiff contends that when she met with Ms. Sullivan plaintiff talked with her about plaintiff's perception "that [she] was not being treated like an ADON should be[.]" Wooten Aff. at 5, ¶ 23. Plaintiff readily acknowledges that at that time Ms. Sullivan "did not specifically state that she thought" that was happening "because [plaintiff] [is] black[.]" Id. However, plaintiff claims that that is what Ms. Sullivan "insinuated[.]" Id. When plaintiff volunteered to work the next day, July 28, 2001,

17

she avers that at that time Sullivan "stated that the only reason she could see why [plaintiff] was not being allowed to work as the ADON was because [she] [is] black." Id. at 31.

The comments outlined above are the only ones upon which plaintiff relies when analyzing the fourth element of a *prima facie* case in her memorandum. The court is mindful, however, of its obligation to "carefully scrutinize[] . . . relevant depositions, affidavits and [other] materials before [it,] . . . for circumstantial evidence that could support an inference of discrimination." See Schappert v. Bedford, Freeman & Worth Publishing Group, LLC, No. 03 Civ. 0058, 2004 WL 1661073, at * 4 (S.D.N.Y. July 23, 2004) (internal quotation marks and citations omitted). When it does that, there is one additional comment which at least at this juncture seems to bear directly on the issue of whether there is proof in the record showing circumstances giving rise to an inference of discrimination.[3] That comment was supposedly made by Ms. Rathke when after her termination plaintiff returned to Reconstruction to pick up her paycheck and submit her expenses. Wooten Aff. at 8, ¶ 42. While there plaintiff claims that Ms. Rathke "came over and stated, 'Based upon my experience with **you people**, you cannot do the job.'" Id. (emphasis in original); see also Pope Aff., exh. 10 thereto (Deposition of Sharon Wooten (April 16, 2004) at 130. During her deposition plaintiff testified that she immediately wrote that comment down on a piece of envelope which she had in her purse. Pope Aff., exh 10 thereto at 131. The notation itself is part of the record. See Wooten Aff., exh. H thereto. However, Ms. Rathke "state[s]

---

[3]        Although plaintiff did not rely upon this comment in her analysis of the inference of discrimination issue, she did mention it in the recitation of facts contained in her memorandum, as well as bringing it up during oral argument.

unequivocally that [she] never made any such statement to [plaintiff]." Rathke
Aff. at 5, ¶ 14.

Reconstruction disregards the other proof upon which plaintiff is relying to
show an inference of discrimination and instead focuses only on the remarks
purportedly made by its employees. Reconstruction is taking the position (1) that
none of the conversations which plaintiff is claiming to have had with its
employees ever took place; and (2) even if they did, those conversations do not
"constitute any kind of evidence of discrimination." Def. Memo. at 10.
Reconstruction's position is flawed on both counts. First of all, as can readily be
seen, the proof is contradictory in terms of whether any of the conversations upon
which plaintiff bases an inference of discrimination actually occurred. Plaintiff
claims they did; others claim they did not. Resolution of such an issue is *not*
appropriate on this summary judgment motion.

Reconstruction's assertion that *none* of these remarks constitute evidence of
discrimination is flawed but for a different reason. "It is well settled that stray
racial remarks made by persons not involved in making the adverse employment
decision are not sufficient to establish an inference of discrimination." Yarde v.
Good Samaritan Hospital, 360 F.Supp.2d 552, 560 (S.D.N.Y. 2005) (citations
omitted). Likewise, "[s]tray remarks, even if made by a decision maker, do not
constitute sufficient evidence [to support] a case of employment discrimination."
Sciola v. Quattro Piu, Inc., 361 F.Supp.2d 61, 68 (E.D.N.Y. 2005) (internal
quotation marks and citations omitted). On the other hand, the Second Circuit has
"long recognized that actions or remarks made by decisionmakers that could be
viewed as reflecting a discriminatory animus may give rise to an inference of
discriminatory motive." Gregory, 243 F.3d at 697 (internal quotation marks and

19

citations omitted). Thus, "when other indicia of discrimination are properly presented, the remarks can no longer be deemed stray, and the jury has a right to conclude that they bear a more ominous significance[;]" <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 468 (2d Cir. 2001) (internal quotation marks and citation omitted), "and bias may be inferred." <u>Lichtenstein v. Triarc Companies, Inc.</u>, No. 02 Civ. 2626, 2004 WL 1087263, at * 5 (S.D.N.Y. 2004) (citations omitted). "When determining whether a comment is a stray remark, courts consider (i) who made the remark, whether a decision maker, supervisor or co-worker; (ii) the point in time when the remark was made in relation to the employment decision at issue; (iii) whether a reasonable person could view the remark as discriminatory; and (iv) whether the remark was related to the decision making process." <u>Sciola v. Quattro Piu, Inc.</u>, 361 F.Supp.2d 61, 68 (E.D.N.Y. 2005) (citations omitted); <u>see</u> <u>also</u> <u>Santos v. Costco Wholesale, Inc.</u>, 271 F.Supp.2d 565, 573 (S.D.N.Y. 2003).

Applying those criteria to the comment purportedly made by Rathke, clearly the same was *not* stray and hence may be considered in determining whether plaintiff has met her burden of showing circumstances giving rise to an inference of discrimination. First of all, because Ms. Rathke made the decision to rescind the offer to plaintiff, the record as presently constituted easily supports a finding that she was a decision maker and/or supervisor. Second, the comment purportedly made by Ms. Rathke was "proximate in time" to when she rescinded the offer. The offer was rescinded on Monday, July 30, 2001, and the alleged comment was within the next two days. <u>See</u> Pope Aff., exh. 10 thereto at 130.

As to the third criteria for ascertaining whether or not a given comment is stray, Reconstruction attempts to diminish the potentially discriminatory nature of

Ms. Rathke's comment, asserting that "there is nothing inherently discriminatory" about that statement in that the phrase "you people" "could just as easily be [sic] a reference to LPNs." Def. Memo. at 13. Reconstruction further reasons that "[i]f made in the context of LPNs, then it would be true that based on . . . Rathke's experience, an [sic] LPN cannot do the job of an [ADON]." Id. at 13-14. Reconstruction is disregarding the fact, however, that statement could just as easily be interpreted as have a negative racial connotation. Taking the record as a whole and drawing all reasonable inferences in plaintiff's favor, as the court must, it finds that a reasonable person could view Ms. Rathke's comment as discriminatory. Finally, the declaration "Based upon my experience with you people, you cannot do the job[,]" could certainly be understood as relating to Rathke's decision to terminate plaintiff. Because the remark which plaintiff attributes to Rathke meets the four criteria enumerated above, and given the other evidence in the record which is indicative of discrimination such as the offer being rescinded only after Reconstruction became aware that plaintiff is African-American, that remark is *not* stray. Hence it may be considered in determining whether plaintiff has met her burden of showing an inference of discrimination.

Turning next to the remarks allegedly made by Crozier, McCloud and Sills, in Reconstruction's view those comments were innocuous and not indicative of discrimination. Further, Reconstruction asserts that even if made, their comments are inadmissible hearsay which is not properly before the court on this summary judgment motion.

There is not need to address these arguments by Reconstruction at this juncture because the court finds that even without taking them into account, there is sufficient proof in the record, as outlined above, which "could lead to the

conclusion that [Reconstruction's] actions *may* indeed have been motivated by [race-]based animus." See Abdu-Brisson, 239 F.3d at 468. "Once that possibility has been demonstrated, at this stage in the analysis where a plaintiff's burden is *de minimis*, Plaintiff[] ha[s] raised an inference of age discrimination." Id. A finding that plaintiff has met her *de minimis* burden here is bolstered by the Second Circuit's recognition that a plaintiff can make "out her prima facie case by offering evidence of discriminatory comment, which can constitute 'direct evidence,' and are adequate to make out a prima facie case, even where uncorroborated." Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 124 (2d Cir. 2004) (footnote and citation omitted). Thus, the fact that Reconstruction believes that plaintiff "fabricated this whole statement [which plaintiff attributes to Rathke]" is irrelevant at this point. See Def. Memo. at 19. To summarize, because plaintiff has met her burden of establishing a *prima facie* case, she has created a presumption of discrimination that Reconstruction may rebut by producing evidence of a legitimate non-discriminatory reason for her termination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

## B. Legitimate, Non-discriminatory Reason

Reconstruction maintains that its decision to rescind the ADON job offer "was [not] for anything other than nondiscriminatory business reasons." Def. Reply at 13. More specifically, Reconstruction claims that it rescinded the offer of the ADON position to plaintiff because (1) she was unqualified; and (2) Reconstruction had serious financial and service providing issues.

Turning first to the issue of plaintiff's qualifications or the lack thereof, the court finds that Reconstruction has met its burden of production. There is ample proof in the record that Ms. Rathke's decision to rescind the offer was because as

an experienced health care administrator, in her judgment, given the dire straits in which Reconstruction found itself at that time, the ADON should be an RN.  See Rathke Aff. at 1, ¶ 1.  Just one example of that severe situation is that in the summer of 2001 DOH had deemed Reconstruction to be "in th[e] bottom two of the 93 nursing homes in th[at] area for quality."  Wooten Aff., exh. M thereto at 1.  To further illustrate, when Ms. Rathke rescinded the offer, and even a month before, Reconstruction . . . was in acute danger of being involuntarily closed by . . .[DOH]."  Rathke Aff., at 2, ¶ 3.  It "had received two very substandard health care surveys by [DOH]."  Id.

In light of the foregoing, Reconstruction intended to periodically have the ADON take over for the DON.  It is undisputed that under New York State regulations a LPN such as plaintiff could not supervise or oversee RNs.  Id. at 3, ¶ 6.  As an additional reason for finding Ms. Wooten unqualified, Reconstruction points out that in July 2002 it intended to have the ADON do clinical assessments, but LPNs are not qualified to conduct the same on their own patients.  See id.  Ms. Rathke further avers that she wanted the ADON to be a RN because at that time the Director of Nursing was relatively new.  See id.  "[T]o prevent summary judgment in favor of plaintiff at this stage, [defendant's] explanation must, if taken as true, *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'" Back, 365 F.3d at 123 (quoting St. Mary's, 509 U.S. at 509) (emphasis added by Back Court)).  Certainly the evidence which Reconstruction is proffering satisfies this burden.

The record also supports Reconstruction's contention that the decision to rescind plaintiff's offer was partly financial.  For example there is evidence that prior to the hiring of Ms. Rathke Reconstruction was in a "tenable financial

23

situation[,]" to the point where a DOH employee volunteered to ask for State funds on Reconstruction's behalf, and "to see if any other companies would be willing to be in receivership with [it]." Wooten Aff., exh. M thereto at 1. Bankruptcy was even alluded to as a means of getting Reconstruction back on its financial feet. See id. at 2.

The foregoing persuades the court that Reconstruction has met its burden of production, considering that at this point in the burden shifting analysis, "the defendant does *not* need to persuade the court that it was, in fact, motivated by the proffered reasons." See Augustus v. MSG Metro Channel, 217 F.Supp.2d 458, 460 n. 9 (S.D.N.Y. 2002) (internal quotation marks and citation omitted) (emphasis added).

Given that Reconstruction has offered legitimate, non-discriminatory reasons for rescinding the offer to plaintiff, *i.e.* in the new administrator's opinion she was not qualified to be ADON under the circumstances in which Reconstruction found itself at that time and its poor financial situation, "the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." Dawson, 398 F.3d at 216 (internal quotation marks and citations omitted).

### C. Pretext

"The plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Id. (internal quotation marks and citation omitted). To determine whether a "plaintiff [has] come forward with

24

admissible evidence sufficient to permit a trier of fact reasonably to conclude that
[race] was a motivating factor[,]" . . . the court must examine the record as a whole
to determine whether a jury could reasonably find an invidious discriminatory
purpose on the part of the employer." <u>Marron v. New York City Campaign
Finance Board</u>, No. 02 Civ. 5562, 2004 WL 1144206, at * 1 (S.D.N.Y. May 21,
2004) (internal quotation marks and citations omitted). However "[t]o defeat
summary judgment . . . the plaintiff is not required to show that the employer's
proffered reasons were false or played no role in the employment decision, but
only that they were not the only reason and that the prohibited factor was *at least
one of the motivating factors*." <u>Id.</u> (internal quotation marks and citations omitted)
(emphasis added).  In short, "the burden ultimately shifts back to plaintiff, who
must adduce evidence sufficient to raise a fact issue as to whether the employer's
reason was merely  pretext[.]" <u>Norris</u>, 2004 WL 1087600, at *7 (internal
quotation marks and citations omitted).

As just discussed, Reconstruction's position is that "the entire basis of
[Rathke's] decision to rescind the job offer to [plaintiff] was strictly [her] best
business judgment[,]" in that in her opinion plaintiff "was not qualified . . . and . . .
Reconstruction. . . could not afford such a position." Rathke Aff. at 5, ¶ 15. The
issue thus becomes whether Reconstruction is using these reasons as a pretext for
discrimination. <u>See Byrnie v. Town of Cromwell, Board of Education</u>, 243 F.3d
93, 106 (2d Cir. 2001) (Although "[a]n employer is entitled to arrive at a
subjective evaluation of a candidate's suitability for a position[,] [t]he issue . . . is
whether such a poor interview . . . could make credible [the employer's] asserted
justifications for its hiring decision.")

Plaintiff contends that it is.  According to plaintiff, Rathke's assertion that

plaintiff was not qualified to be ADON is significantly undermined by several factors. First, plaintiff points out that although Ms. Rathke explained that a LPN such as plaintiff could not supervise RNs, there is evidence that such a situation would not arise because there was a second ADON who was a RN and who could take over as DON if necessary. Wooten Aff., exh. E thereto; Randall Aff. at 3, ¶ 11. The need for plaintiff to be a RN so she could supervise RNs is further diminished, in plaintiff's opinion, because there were other RNs either physically present or available by telephone (which is all State regulations require). Pope Aff., exh. 11 thereto at 39. This evidence, from plaintiff's perspective, seriously erodes Reconstruction's argument about the necessity of the ADON being a RN.

Likewise, plaintiff claims that Reconstruction's financial difficulties were also nothing more than a pretext for race discrimination in that it was aware of those difficulties when it hired plaintiff, yet it still hired her for an annual salary of $50,000.00. In addition, Rathke admitted during her deposition that she did not know whether rescinding's plaintiff's job offer saved Rathke any money. Sulimowicz Supp. Aff., exh. V thereto at 77. Moreover, in the three to four months after Reconstruction rescinded plaintiff's offer, there is proof that it hired a number of nurses with salaries over the $50,000.00 salary offered to plaintiff. See Affidavit of Sharon M. Sulimowicz (Aug. 9, 2004), exh. S thereto.

In assessing this proof, it is important to keep in mind that despite Reconstruction's assertion to the contrary[4] "the plaintiff is *not* required to show that the employer's proffered reasons were false or played no role in the

---

[4]    Reconstruction is taking the position that on the issue of pretext plaintiff has "the burden of demonstrating [that] these business reasons were untrue and that intentional discrimination was the real reason for the job offer rescission." Def. Reply at 13 (emphasis in original).

26

employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." Back, 365 F.3d at 123 (internal quotation marks and citation omitted) (emphasis added). On the record as presently constituted, plaintiff Wooten has made such a showing.

Thus at the end of the day, after carefully reviewing the entire record, the court finds that plaintiff's Title VII and New York Human Rights Law claims fall into that category of claims which is not appropriate for summary judgment because Reconstruction's "intent and state of mind" have been placed in issue. See Frasure v. Principi, 367 F.Supp.2d 245, 252 (D.Conn. 2005); see also Back, 365 F.3d at 124 (internal quotation marks and citation omitted) ("noting that the issue of pretext is ordinarily for the jury to decide at trial rather than for the court to determine on a motion for summary judgment").

## III. Breach of Contract

More than "a century ago the [New York] Court of Appeals ruled that without some form of contractual agreement establishing a durational period, employment is terminable at will by either the employer or the employee, and neither has a cause of action against the other based on the termination of employment." Myers v. Coradian Corporation, 459 N.Y.S.2d 929, 930 (3rd Dep't 1983) (citing Martin v. N.Y. Life Ins. Co., 148 N.Y. 117 (1895)). This is still the law today in New York. See id.

Reconstruction argues that plaintiff was an "at will" employee, and hence "there was a mutual right to terminate employment at any time by either party." Def. Reply at 18. Plaintiff counters that "the totality of circumstances surrounding the employment agreement between [she] and [Reconstruction] demonstrate that factual issues exist[] which render the employment agreement ambiguous." Pl.

27

Memo. at 21. Plaintiff suggests that this ambiguity is created by three facts: (1) the parties agreed that plaintiff would be reimbursed for her moving expenses over the course of her employment; (2) the parties signed a document changing the starting date from July 17, 2001 to July 23, 2001; and (3) a provision in the employee handbook giving new hires a 90 day probationary period, which plaintiff claims "could be construed as a guarantee that termination would only be for cause." Id. at 22 (footnote omitted).

Try as she might, plaintiff is unable to create a factual issue as to her status as an at-will employee. It is well settled in New York that "[a] hiring at so much a day, week, month or year, not time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve[.]" TSR Consulting Services, Inc. v. Steinhouse, 699 N.Y.S.2d 375, 376 (1st Dep't 1999) (internal quotation marks and citation omitted). Here, the "letter of employment offer" states, inter alia, "The starting salary has been determined to be $50,000.00 per year." Pope Aff., exh. 3 thereto. That letter does update the "effective date" from July 13, 2001 to July 23, 2001, and specifies that plaintiff will begin employment with Reconstruction "[e]ffective 7/25/01[.]" Id. Nowhere in that letter is there any mention of a time frame for plaintiff's employment as an ADON, however. There is nothing in that letter prohibiting either party from terminating it. Reconstruction could rescind the offer or terminate plaintiff for "any reason or even for no reason." See Murphy v. American Home Products, 58 N.Y.2d 293, 300 (1983). Similarly, plaintiff could have terminated her employment at any time and returned to St. Louis if she so chose. Thus, the present case falls squarely within the "inflexible" rule first enunciated by the Court of Appeals in Martin, that in the absence of a "durational

period" an employee is terminable at will. See Martin, 148 N.Y. at 121; see also Hotchkiss v. Godkin, 71 N.Y.S.2d 624 (4th Dep't 1901) (indicating that language such as "at the rate of $1,200 per annum" would be regarded as a hiring at will under Martin).

Plaintiff's argument to the contrary is unavailing. To support her argument that the letter of employment is ambiguous, plaintiff relies upon Meyers, 459 N.Y.S.2d 929, a case which plaintiff deems to have "facts remarkably similar to the instant action[.]" Pl. Memo. at 21. Plaintiff is mistaken. The Meyers court did find an ambiguity precluding summary judgment, but that was because in addition to reciting the salary "per year," which "does *not* alone establish a durational period for the employment[,]" the letter contained references to a "review after six months" and the entitlement to "two weeks of paid vacation this year." Meyers, 459 N.Y.S.2d at 930 (citations omitted) (emphasis added). The court found that the foregoing evidence, when read together, could "reasonably be construed as evidence of an intent that the hiring be for at least a certain period of time." Id.

There is no similar proof in the present record. The provision for the reimbursement of moving expenses, especially given that it too is without a durational period, does not create an issue of fact as to whether plaintiff was being hired for a definite period of time. Plaintiff's attempt to create an issue of fact by relying upon the 90 day probationary period in the employee handbook is similarly unavailing. This is not a situation such as Weiner v. McGraw-Hill, Inc., 457 N.Y.S.2d 193 (1982), where the Court recognized an exception to the at-will employee doctrine. The Weiner Court based that exception upon the fact that the employment form which plaintiff signed there specifically referred to the provisions of the employer's "handbook on personnel policies and procedures[,]"

29

which in turn explicitly provided that the employer would dismiss an employee only "for just and sufficient cause[.]" Id. at 194 (citation omitted). Clearly a probationary period does not rise to the level of an express written policy that plaintiff would not be terminated except for cause; this is especially so considering that Reconstruction's employee handbook is not mentioned in the letter of employment offer.

In sum, the court finds that Reconstruction has met its burden of showing "that the construction of the agreement that it advocates [is] the only construction that could fairly be placed thereon[;]" TRS Consulting, 699 N.Y.S.2d at 377, and hence it is entitled to summary judgment with respect to plaintiff's third cause of action alleging breach of contract.

## IV.  Promissory Estoppel

Despite the fact that Reconstruction purports to be moving for summary judgment as to the entire action, it did not address plaintiff's fourth cause of action for promissory estoppel in its memorandum or in its reply memorandum. If Reconstruction did not deem this cause of action worthy of discussion at this time, neither does the court. Therefore, it denies this aspect of Reconstruction's motion.

## V.  Negligent Misrepresentation

"It is settled New York law that the elements of negligent misrepresentation are (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their damage." Dallas Aerospace, Inc. v. CIS Air Corporation, 352 F.3d 775, 788 (2d Cir. 2003) (citation omitted). There is a fifth and what the Second Circuit has termed the "[m]ost relevant" element of a negligent misrepresentation claim, and that is "that . . . the declarant must express the words directly, with knowledge or notice that they will

be acted upon, to one to whom the declarant is bound by some relation or duty of care." Id. (citation omitted).  This "'special relationship'" is "the basic requirement . . . for a negligent misrepresentation tort action." Id. at 788-89.

Mirroring its argument on the breach of contract claim, Reconstruction asserts that summary judgment on the negligent misrepresentation claim is proper because no misrepresentation was made, let alone a negligent one, "or even an agreement on any minimum time of employment[.]" Def. Reply at 19.  Plaintiff did not address this argument, perhaps because it was made only in Reconstruction's reply memorandum.  In any event, Reconstruction is misapprehending  plaintiff's negligent misrepresentation claim.  Plaintiff is not focusing on the time frame for employment.  Rather, plaintiff contends that Reconstruction misrepresented to her that she was qualified for the position of ADON even though she is a LPN and not an RN.

Regardless of how the alleged misrepresentation is framed, summary judgment is premature.  Such relief is premature for two reasons.  The first is that the parties did not brief the issue of whether a duty existed between Reconstruction and plaintiff.  The existence of such a duty is an issue of law for the court, Michalski v. Home Depot, Inc., 225 F.3d 113, 121 (2d Cir. 2000);  but the court declines to address the same without having the benefit of the parties' respective positions.

Second, assuming *arguendo* the existence of a duty between the parties hereto, summary judgment still would be premature.  That is so because "[w]hether a special relationship exists between two parties is an *issue of fact*[.]" Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001) (emphasis added).  Quoting from the Court of Appeals decision in Kimmell

31

v. Schaefer, 652 N.Y.S.2d 715 (1996), the Suez Equity Court reiterated that in resolving the special relationship issue a factfinder must weigh three factors:

> [(1)] whether the person making the representation held or appeared to hold unique or special expertise; [(2)] whether a special relationship of trust or confidence existed between the parties; and [(3)] whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.

Id. (quoting Kimmell, 652 N.Y.S.2d at 719). Given the parties' failure to address these critical aspects of plaintiff's negligent misrepresentation claim, and the fact that a fact issue could well exist as to the existence of a "special relationship," the court denies Reconstruction's summary judgment motion as to plaintiff's fifth cause of action.

To conclude, the court hereby:

(1) DENIES defendant Reconstruction Home, Inc.'s motion for summary judgment as to plaintiff's first (Title VII, 42 U.S.C. §§ 2000e *et seq.*) and second (N.Y. HUMAN RIGHTS LAW § 297(9)) causes of action;

(2) GRANTS defendant Reconstruction Home, Inc.'s motion for summary judgment as to plaintiff's third cause of action (breach of contract);

(3) DENIES defendant Reconstruction Home, Inc.'s motion for summary judgment as to plaintiff's fourth (promissory estoppel) and fifth (negligent misrepresentation) causes of action.

The court further ORDERS that this action be set down for trial, commencing at 10:00 a.m. on Monday, July 18, 2005 at the U.S. District Courthouse in Syracuse, New York.  A pre-trial order in relation thereto accompanies this decision.

32

IT IS SO ORDERED.
DATED:
       6 / 24/ 05

                                     Neal P. McCurn,
                                     Senior U.S. District Judge